# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-10812

United States Court of Appeals
Fifth Circuit

**FILED**

August 31, 2017

Lyle W. Cayce
Clerk

In re:

DEPUY ORTHOPAEDICS, INCORPORATED;
DEPUY PRODUCTS, INCORPORATED;
DEPUY SYNTHES, INCORPORATED;
JOHNSON & JOHNSON INTERNATIONAL;
JOHNSON & JOHNSON SERVICES, INCORPORATED;
JOHNSON & JOHNSON,

     Petitioners.

Petition for Writ of Mandamus to
the United States District Court
for the Northern District of Texas

Before JONES, SMITH, and COSTA, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

This petition for writ of mandamus arises from a multidistrict litigation ("MDL") proceeding involving more than 9,300 plaintiffs.[1]  Those plaintiffs have brought product-liability claims against petitioners for designing,

---

[1] *See* MDL Dkt. No. 772.  Citations to "MDL Dkt." are to *In re: DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prods. Liab. Litig.*, N.D. Tex. Case No. 3:11-md-02244-K.

No. 17-10812

manufacturing, and distributing an allegedly defective hip-implant device, the Pinnacle Acetabular Cup System (the "Pinnacle Device").[2]  The MDL court denied petitioners' motions to vacate an order and dismiss certain cases for lack of personal jurisdiction.[3]

We have reviewed the petition for writ of mandamus, the opposition thereto, petitioners' reply in support of the writ, the exhibits attached to those submissions, and the applicable law.  We also have heard one hour of oral argument on the petition.  Despite finding serious error, a majority of this panel denies the writ that petitioners seek to prohibit the district court from proceeding to trial on plaintiffs' cases.[4]  A different majority holds (1) that so-called *Lexecon*[5] objections were not waived and that the district court abused its discretion in finding waiver; (2) that the petitioners have shown the required clear and indisputable right to a writ of mandamus; and (3) that the petitioners have established that a writ of mandamus is appropriate under the

---

[2] *See* Petitioners' Appendix ("Petitioners' App.") 2.

[3] *Id.* at 24.

[4] In anticipation of any suggestion that a court of appeals exceeds its proper role in ruling on pending issues but nonetheless denying mandamus, we note that this court has routinely held, sometimes in published opinions, that a district court erred, despite stopping short of issuing a writ of mandamus.  *E.g.*, *In re Dean*, 527 F.3d 391 (5th Cir. 2008) (per curiam) (holding that district court had "violated" a federal statute); *In re United States*, No. 07-40629, 2007 U.S. App. LEXIS 30793 (5th Cir. July 19, 2007) (per curiam) (holding that district court "abused its discretion"); *In re U.S. Dep't of Homeland Sec.*, 459 F.3d 565 (5th Cir. 2006) (holding that district court "erred in declaring that no law enforcement privilege exists"); *In re Kleberg Cty.*, 86 F. App'x 29 (5th Cir. 2004) (holding that district court "impermissibly violated the County's privilege not to reveal its confidential informants" and ran "afoul of controlling law"); *In re Avantel, S.A.*, 343 F.3d 311 (5th Cir. 2003) (holding that district court erred in compelling production of allegedly privileged documents); *In re Stone*, 986 F.2d 898 (5th Cir. 1993) (per curiam) (holding that district court abused its discretion in ordering who must be present at settlement conference); *In re Office of Thrift Supervision*, 948 F.2d 910 (5th Cir. 1991) (holding that district court erred as a matter of law in attempting to transfer the proceeding, but noting that petitioner "has not made an adequate showing . . . of harm that cannot be undone if the order is reversed on appeal").

[5] *See Lexecon Inc. v, Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998).

2

No. 17-10812

circumstances.  But in regard to the ultimate result, a majority concludes that the petitioners have not shown that they have no other adequate means to attain the relief they seek.  A majority requests the district court to vacate its ruling on waiver and to withdraw its order for a trial beginning September 5, 2017.

I.

The MDL proceeding began in 2011, when the Judicial Panel on Multi-district Litigation ordered the transfer of all actions involving the Pinnacle Device into the MDL court in the Northern District of Texas.[6]  Later, the MDL court issued an order allowing Pinnacle Device plaintiffs to file directly in that district.[7]

An MDL court can conduct pretrial proceedings but cannot try a case that it would not be able to try without its MDL status.  Federal law limits an MDL court's jurisdiction over a transferred case to pretrial proceedings and provides that once those are completed, the MDL court must remand the transferred case to the district from which it was transferred.[8]  Cases that are directly filed in an MDL court are treated "as if they were transferred from a judicial district sitting in the state where the case originated."[9]  An MDL court can try a case where venue is improper if the parties waive their objections.  Such waivers are known as "*Lexecon* waivers."

In August 2012, the MDL court entered Case Management Order 8 ("CMO 8") directing the parties to "submit . . . a stipulated protocol for selection

---

[6]  Petitioners' Appendix ("Petitioners' App.") 3.

[7] *Id.*

[8] *See* 28 U.S.C. § 1407(a).

[9] *See In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, No. 3:09-md-02100-DRH-PMF, 2011 WL 1375011, at \*6 (S.D. Ill. Apr. 12, 2011).

and conducting of bellwether trials in this MDL proceeding" and then "file their recommended selection of 4–6 cases to be included in an initial bellwether trial process."[10]  Bellwether trials are meant to

> produce a sufficient number of representative verdicts and settlements to enable the parties and the court to determine the nature and strength of the claims, whether they can be fairly developed and litigated on a group basis, and what range of values the cases may have if resolution is attempted on a group basis.[11]

The parties worked with the court and the special master to develop a protocol for bellwether trials.[12]

The special master produced a report that included a proposal, agreed to by the parties, to try four cases from a pool of eight.[13]  The report stated that "Defendants' Lead Counsel have already agreed that they will not raise a venue objection (i.e., a *Lexecon* objection) to any cases in the MDL proceeding being tried in the Northern District of Texas."[14]

The process became contentious when plaintiffs proposed to consolidate multiple cases for each bellwether trial.  Petitioners objected, claiming that they did "not agree to waive their *Lexecon* objections for a prejudicial, multi-plaintiff trial."[15]  A few days later, petitioners clarified that "we have waived the [*Lexecon*] restriction on . . . these cases, consistent with the report that the special master gave to the court earlier."[16]

---

[10] Petitioners' App. 4.

[11] *Manual for Complex Litigation (Fourth)* (2004) § 22.315; *see also In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997).

[12] *See* Petitioners' App. 4.

[13] *Id.*

[14] *Id.*

[15] MDL Dkt. No. 341, p. 5.

[16] MDL Dkt. No. 344, p. 5.

No. 17-10812

The first trial, involving a single case transferred from the District of Montana, was held in September and October 2014.[17] The jury found for petitioners.[18]

After the first trial, the parties and the court proceeded to select a new set of bellwether cases.[19] The special master noted again that "Defendants have agreed they will not raise a venue objection (i.e., a *Lexecon* objection) to any cases in the MDL being tried in the Northern District of Texas."[20]

The court selected five cases, all directly filed by Texas plaintiffs, and ordered that they be tried together in a consolidated second bellwether trial.[21] Defendants objected to the consolidation but not on grounds of venue or personal jurisdiction.[22] The trial was held in early 2016.[23] The jury returned a $502 million verdict, which the court reduced.[24] Petitioners appealed.[25]

Petitioners moved to stay future bellwether trials pending the appeal. In a footnote to their brief urging a stay, they claimed that "[a]lthough [they] previously waived *Lexecon* for purposes of selecting prior bellwether cases, they have never agreed to a blanket *Lexecon* waiver and do not waive their venue objections with respect to forthcoming trials."[26] The court denied a stay and stated that petitioners had already waived their venue objections to trying

---

[17] Petitioners' App. 6.

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.* at 6–7.

[22] *Id.* at 7.

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] MDL Dkt. No. 657-1, p. 2 n.1.

cases in the MDL court.[27]

In June 2016, the MDL court selected six cases, all directly filed by California plaintiffs, for a third bellwether trial.[28]  Petitioners unsuccessfully moved to dismiss for want of personal jurisdiction and reiterated their claim that they had waived their venue objections only with respect to the first two bellwether trials.[29]  The trial was held in September and October 2016, and the jury returned a $1.04 billion verdict, which the court reduced.[30]  Petitioners appealed.[31]

In November 2016, the MDL court issued an order selecting ten cases with New York plaintiffs for a fourth bellwether trial.[32]  Petitioners moved to vacate the order and dismiss the claims for lack of personal jurisdiction, reiterating their assertions about waiver.[33]  In June 2017, the court denied both motions, finding that petitioners had "clearly and unequivocally represented to this Court on multiple occasions that they waived any objections based on venue to trying any of the cases in the MDL in the Northern District of Texas."[34]  The MDL court intends to try some of the New York cases in a fourth bellwether trial scheduled to begin on September 5, 2017.[35]  Petitioners naturally ask this court to rule before then.

---

[27] *See* MDL Dkt. No. 665, pp. 8–9, 11.

[28] *See* Petitioners' App. 8.

[29] *Id.*

[30] *Id.* at 9.

[31] *See* Fifth Cir. No. 17-10828.

[32] *See* Petitioners' App. 9.

[33] *Id.* at 9–10.

[34] *Id.* at 19–20, 24.

[35] On August 25, 2017, the day after this panel heard oral argument on the mandamus petition, the district court entered a two-paragraph order stating, in relevant part, as follows:

No. 17-10812

II.

A writ of mandamus is "a drastic and extraordinary remedy reserved for really extraordinary causes."[36] It "is not a substitute for an appeal."[37] Only a showing of "exceptional circumstances amounting to a judicial usurpation of power" or "a clear abuse of discretion" will justify granting a mandamus petition.[38] Mandamus is appropriate where (1) the petitioner has shown a "clear and indisputable" right to the writ; (2) the court is "satisfied that the writ is appropriate under the circumstances"; and (3) the petitioner has "no other adequate means to attain the relief [it] desires.[39]

A.

First, petitioners must show that they have a "clear and indisputable" right to mandamus relief.[40] That "require[s] more than showing that the court misinterpreted the law, misapplied it to the facts, or otherwise engaged in an abuse of discretion."[41] Where a matter is committed to a district court's discretion, "we review only for clear abuses of discretion that produce patently erroneous results."[42] Some courts have decided that waiver determinations

---

[T]he Court notifies the parties that the following cases, which were selected to be prepared for jury trial beginning September 5, 2017 . . ., will be the final bellwether cases tried in the Dallas Division of the Northern District of Texas pursuant to Plaintiffs' and Defendants' *Lexecon* waivers: [listing eight cases from New York].

[36] *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380 (2004) (internal quotation marks omitted).

[37] *In re Chesson*, 897 F.2d 156, 159 (5th Cir. 1990) (per curiam).

[38] *Cheney*, 542 U.S. at 380 (citations and internal quotation marks omitted).

[39] *In re Lloyd's Register N. Am., Inc.*, 780 F.3d 283, 288 (5th Cir.) (quoting *Cheney*, 542 U.S. at 380–81), *cert. denied*, 136 S. Ct. 64 (2015).

[40] *Cheney*, 542 U.S. at 381 (quoting *Kerr*, 426 U.S. at 403).

[41] *Lloyd's Register*, 780 F.3d at 290.

[42] *Volkswagen*, 545 F.3d at 312.

7

No. 17-10812

are committed to a district court's discretion.[43]

Section 1407 provides that transferred actions "*shall be remanded . . .* at or before the conclusion of such pretrial proceedings."[44]  This mandatory language creates a powerful presumption in favor of remand, one that cannot easily be overcome.[45]  The result is a statutory right to remand following an MDL proceeding, analogous to the statutory right to removal under 28 U.S.C. § 1441.  A party cannot waive its removal rights through a forum-selection clause unless the waiver is "clear and unambiguous."[46]  Likewise, we hold that a *Lexecon* waiver must be "clear and unambiguous."[47]

Petitioners' waivers all included, or referred to, limiting language.  The MDL court's notion,[48] echoed by plaintiffs, that petitioners are trying to limit their waivers retroactively, is not borne out by the facts.  We hold that petitioners limited their venue waivers to the first two bellwether trials and that the MDL court erred by declaring that they had globally and permanently waived their objections to venue and personal jurisdiction.  That was grave error:  At most, petitioners' waivers included ambiguous language that did not

---

[43] *See, e.g., Lechoslaw v. Bank of Am., N.A.*, 618 F.3d 49, 55–56 (1st Cir. 2010) ("A determination as to 'waiver [of personal jurisdiction is] within the discretion of the trial court, consistent with its broad duties in managing the conduct of cases pending before it.'") (quoting *United States v. Ziegler Bolt & Parts Co.*, 111 F.3d 878, 882 (Fed. Cir. 1997)).  We need not decide that standard-of-review question here, because a majority concludes that the abuse-of-discretion is met anyway.

[44] 28 U.S.C. § 1407 (emphasis added).

[45] *See Lexecon*, 523 U.S. at 35.

[46] *City of New Orleans v. Mun. Admin. Servs., Inc.*, 376 F.3d 501, 505–06 (5th Cir. 2004).

[47] This is an issue of first impression.  The only other circuit to have addressed the question, the Seventh Circuit, also held that a strong showing is needed to effect a *Lexecon* waiver.  *See Armstrong v. LaSalle Bank Nat'l Ass'n*, 552 F.3d 613, 615–19 (7th Cir. 2009) (finding that the plaintiffs had not waived their right to remand under § 1407 by participating in pretrial proceedings and agreeing to specific trial dates).

[48] *See* Petitioners' App. 7.

8

No. 17-10812

indicate a clear intent to waive all *Lexecon* objections to trials before the MDL court.

Plaintiffs highlight the broad language in the special master's first report, which states that petitioners' lead counsel agreed not to raise a venue objection "to any cases in the MDL proceeding being tried in the [Forum]."[49] But that report was issued pursuant to CMO 8,[50] which refers to "an initial bellwether trial process" and focuses on the first bellwether trial.[51] Given that context, that waiver is unequivocally limited to the first bellwether trial.

Plaintiffs point to the status conference in September 2013 in which petitioners appeared to walk back an earlier claim that they did "not agree to waive their *Lexecon* objections for a prejudicial, multi-plaintiff trial." But during the status conference, petitioners' counsel noted that "we have waived the [*Lexecon*] restriction on these—these cases, consistent with the report that the special master gave to the court earlier."[52] The part of the sentence after the em-dash limits the waiver to "these cases," an apparent reference to the first batch of bellwether cases. One of those cases was the subject of the first bellwether trial; the MDL court removed the others from its trial pool after that trial.[53]

In December 2014, after the first bellwether trial, the special master asked petitioners' counsel to "confirm DePuy is willing to waive Lexecon for all MDL cases to be tried in Dallas."[54] Petitioners' counsel responded "Confirmed.

---

[49] Respondents' Appendix 9.

[50] *Id.*

[51] MDL Dkt. No. 190, p. 2.

[52] MDL Dkt. No. 344, p. 5.

[53] *See* Petitioners' App. 6.

[54] *Id.* at 25.

9

No. 17-10812

In order to allow the Court to select the next round of bellwether cases from a broader pool of cases that can be tried in Dallas, defendants have agreed to waive Lexecon objections to cases in the MDL proceeding being tried there."[55] Plaintiffs portray that email as an unequivocal *Lexecon* waiver. But, again, note the limiting language: "the next round of bellwether cases." The special master's subsequent report, in which he declared that petitioners had effected a *Lexecon* waiver for "any cases in the MDL being tried in the [Forum],"[56] must be read in light of those earlier remarks. Accordingly, there is no "clear and unequivocal" waiver; a plain reading is much to the contrary. We hold that the MDL court clearly abused any discretion it might have had and, in doing so, reached a "patently erroneous" result.

## B.

Second, granting a mandamus petition must be "appropriate under the circumstances."[57] Mandamus relief is "particularly appropriate" where an issue's importance extends "beyond the immediate case."[58] Petitioners note that the personal-jurisdiction issue has implications beyond the fourth bellwether trial because of the large number of cases pending in the Pinnacle Device MDL proceeding and because the district court's reasoning may be adopted by future MDL courts. At oral argument, plaintiffs' counsel, when questioned, conceded that he claims a "global waiver" that extends to over nine thousand cases. We hold that mandamus relief would be "appropriate under the circumstances" if all three standards were satisfied.

---

[55] *Id.*

[56] MDL Dkt. No. 490, p. 1.

[57] *Cheney*, 542 U.S. at 381.

[58] *Volkswagen*, 545 F.3d at 319.

No. 17-10812

C.

And finally, petitioners must show that they have "no other adequate means" to obtain relief.[59] That is a high bar: The appeals process provides an adequate remedy in almost all cases, even where defendants face the prospect of an expensive trial.[60] Mandamus is appropriate only where an error is truly "irremediable on ordinary appeal."[61] For example, after a Vermont district court found that it had personal jurisdiction over a New York Catholic diocese in a sex-abuse case, the Second Circuit granted mandamus, citing "the irreparable harm [that would be] caused by a needless foray into prior abuse investigations within the Diocese, exposing victims and their families to grueling [and unnecessary] inquiries."[62] In *Abelesz v. OTP Bank*, 692 F.3d 638, 661 (7th Cir. 2012), the court granted mandamus to halt a $75 billion lawsuit against two Hungarian banks, citing, among other factors, "the inherent involvement with U.S. foreign policy."

Petitioners claim that appeal is not an adequate remedy because the cost of having to defend more bellwether trials is "unjustifiable" given the strength of their personal-jurisdiction claims. It is no doubt true that petitioners will incur substantial costs if the fourth bellwether trial is allowed to proceed. At oral argument, the parties represented that each of the previous three bellwether trials lasted several weeks. But for appeal to be an inadequate remedy,

---

[59] *Cheney*, 542 U.S. at 380 (quoting *Kerr v. U.S. Dist. Court for N.D. Cal.*, 426 U.S. 394, 403 (1976)).

[60] *Lloyd's Register*, 780 F.3d at 288 ("Even though the defendant may be required to engage in a costly and difficult trial and expend considerable resources before the court enters an appealable judgment, those unrecoverable litigation costs are not enough to make this means of obtaining relief inadequate.").

[61] *In re Avantel, S.A.*, 343 F.3d 311, 317 (5th Cir. 2003).

[62] *In re Roman Catholic Diocese of Albany, N.Y., Inc.*, 745 F.3d 30, 41 (2d Cir. 2014) (per curiam).

No. 17-10812

there must be "some obstacle to relief beyond litigation costs that renders obtaining relief not just expensive but effectively unobtainable."[63]  Nor is the "hardship [that] may result from delay"—such as the risk of substantial settlement pressure—grounds for granting a mandamus petition.[64]

This case is distinguishable from *Lloyd's Register* and from *In re Volkswagen of America, Inc.*, 545 F.3d 304 (5th Cir. 2008) (en banc), in which we granted mandamus petitions overturning venue rulings.  In both, appeal was an inadequate remedy because petitioners (1) would have to overcome a high standard of review on appeal and (2) would face irreversible, non-monetary harm if the case went forward.[65]  Those factors are not present here.  This court reviews a district court's exercise of personal jurisdiction *de novo*,[66] so the standard of review on appeal is not an issue, and petitioners would not face irreversible, non-monetary harm if the fourth bellwether trial were held.

We hold that petitioners have the usual and adequate remedy of ordinary appeal.  In fact, they have taken advantage of that remedy by appealing the judgment in the third bellwether trial on personal-jurisdiction grounds.  That appeal was filed in July 2017 and will be decided in due time.

### III.

Petitioners have met two of the three parts of the *Cheney* test.  But the requirement that a party have "no other adequate means" of obtaining relief is not satisfied.  Accordingly, a majority of this panel concludes that the petition for writ of mandamus is DENIED.

---

[63] *Lloyd's Register*, 780 F.3d at 289.

[64] *Schlagenhauf v. Holder*, 379 U.S. 104, 110 (1964).

[65] *Lloyd's Register*, 780 F.3d at 289; *Volkswagen*, 545 F.3d at 318–19.

[66] *See Jackson v. FIE Corp.*, 302 F.3d 515, 521 (5th Cir. 2002).

No. 17-10812

GREGG COSTA, Circuit Judge, concurring in the judgment:

I agree that we should deny the petition because direct appeal affords the Petitioners an adequate avenue for pursuing this issue.[1]  I would leave it at that.  The principle counseling against unnecessary rulings is strong in any case.  But it is stronger still in the mandamus context.  As an appellate court's mandamus authority should be "reserved for really extraordinary causes," *Ex parte Fahey*, 332 U.S. 258, 259–60 (1947), this matter, with its compressed time frame, is not the place to decide the merits. By reaching out to do so when it is not necessary to the outcome, the majority opinion makes mandamus the "substitute for appeal" that it is not supposed to be.  *Id.* at 260.

The existence of an adequate remedy via direct appeal means we should not address whether Petitioners waived their *Lexecon* rights.  The Supreme Court has said that the inadequacy of any other remedy is the first requirement a petitioner must show.  *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380 (2004), *quoted in In re Volkswagen of America, Inc.*, 545 F.3d 304, 310 (5th Cir. 2008) (en banc).   The priority given this condition makes sense as it is what "ensure[s] that the writ will not be used as a substitute for the regular appeals process." *Cheney*, 542 U.S. at 380–81.  The majority opinion demonstrates the danger when this limitation is ignored: in addressing the merits, the majority opinion renders meaningless the direct appeal it ends up recognizing as the proper remedy.  After being told by a court of appeals that it reached a "patently erroneous" result, what district court is going to go

---

[1] In arguing that a direct appeal is inadequate, the dissenting opinion discusses settlement pressure the defendants may be feeling.  But that pressure would be the result of more than 9,000 cases being filed, not where those cases would be tried (especially as the Northern District of Texas is hardly known as a hot spot for tort litigation).  If anything, sending thousands of cases back to hundreds of district judges around the country is likely to accelerate the number of trials as there will no longer be the constraint of a single judge's schedule and resources.

forward with the trial Petitioners are trying to prevent? The majority opinion cites no other example of a mandamus court telling a district court its ruling is in error even though it concludes that a direct appeal is adequate. That is not surprising. Such an approach effectively grants the writ the court says it is denying, overriding the essential limitation that mandamus be granted only when it is the only vehicle for relief. With this precedent, any future mandamus court can decide the merits even when the remaining requirements are not present.

As for the waiver question the majority opinion reaches out to address, Petitioners have not shown a "clear and indisputable" entitlement to relief. In another example of the restraint that should characterize mandamus review, that is the only question to consider. *See, e.g.,* *In re Beazley Ins. Co.,* No. 09-20005, 2009 WL 7361370, at *6 (5th Cir. May 4, 2009) ("Beyond our conclusion that Beazley has not established a clear and indisputable right to the issuance of the writ, we make no pronouncement one way or the other as to the correctness of the district court's ruling."). The district court did not misinterpret the law; it applied the same "clear and unambiguous" burden for establishing waiver that the majority opinion applies to *Lexecon* waivers "as a matter of first impression."[2] The factbound application of that standard is, as the majority opinion recognizes most courts have held, reviewed only for abuse of discretion. We should thus be applying deference on top of deference as the mandamus inquiry is not whether the district court abused its discretion, but whether it *indisputably* abused its discretion in finding that the following email exchange, among other conduct, clearly waived *Lexecon*:

---

[2] Holding that a court reached a "patently erroneous" result on a question that involves a matter of first impression is also in tension with the limited mandamus standard of review.

No. 17-10812

> James M. Stanton [Special Master for the MDL]: Please confirm DePuy is willing to waive Lexecon for all MDL cases to be tried in Dallas.
>
> Seth Roberts [Council for the Defendant]: Confirmed. In order to allow the Court to select the next round of bellwether cases from a broader pool of cases that can be tried in Dallas, defendants have agreed to waive Lexecon objections to cases in the MDL proceeding being tried there.

Even if other judges could find differently as an initial matter, or even if they could view the district court's finding to be an abuse of discretion, that is certainly not the only possible conclusion to draw. But that is what mandamus requires; a district court's ruling is not *indisputably* erroneous if a reasonable argument can be made to support it. Here is that argument based on three features of the emails quoted above, which were exchanged after Petitioners had won the first bellwether and had no strong reason to fear Dallas trials:

- The first word is full agreement— "Confirmed"—with the Special Master's broad, unqualified question whether DePuy is waiving *Lexecon* "for all MDL cases to be tried in Dallas." The confirmation was not qualified, such as "Confirmed, but."

- The language Defendants tout as a limitation— "in order to allow this Court to select the next round of bellwether cases from a broader pool of cases that can be tried in Dallas"— describes the reason for the waiver, not its scope, and contemplates that a broader pool of cases can be tried in Dallas.

- What is actually "agreed to" is phrased in broad, unlimited terms: "agree[ing] to waive *Lexecon* objections to cases in the MDL being tried there."

What is more, the three references to the plural "cases" defeats Petitioners' interpretation that this exchange is limited to the second bellwether, which at the time it anticipated being a single plaintiff case. There are numerous ways that sophisticated counsel for the Petitioners could have

15

phrased the limitation on their waiver they only started to contend exists after they lost the second trial. As those caveats were not contemporaneously asserted, the district court took an arguably reasonable view that Petitioners made an unambiguous waiver of *Lexecon* for all then-anticipated bellwethers, which includes the fourth trial at issue here. Indeed, the district court recently said that the *Lexecon* waiver is limited to these bellwethers with the upcoming trial being the last one. And this analysis does not even get into additional conduct on which the district court relied in finding waiver, including multiple reports of the Special Master recounting Petitioners' waiver as a global one to which Petitioners did not object.

But all this discussion about waiver is premature. We should allow the usual path of a direct appeal, which the majority opinion recognizes is available, to take its proper course and leave the merits to that future panel. I have concerns that an MDL process that takes trials away from local judges and juries adds to the centralizing trend that is so prevalent in the law and society generally. But in neglecting the strict limitations on our mandamus power to address the merits when we do not need to, the court engages in a different but also pernicious form of centralization: more power in the hands of appellate judges rather than the trial judge who has lived with the case for six years and knows the ins and outs of the parties' representations.

No. 17-10812

EDITH H. JONES, Circuit Judge, concurring in part and dissenting in part:

I am pleased to concur in Sections I, IIA and B of Judge Smith's opinion, the latter of which hold that petitioners have shown a clear and indisputable right to relief from the district court's patently erroneous interpretation of their *Lexecon* waivers and that mandamus relief would be "appropriate under the circumstances" of this case. I dissent, however, from Section IIC, which concludes that a pending appeal of one set of bellwether cases provides an adequate remedy at law rendering mandamus relief unavailable.

A few additional facts about this litigation need to be stressed. Not only are there presently over 9,300 cases pending in the Northern District of Texas for pretrial proceedings, but they comprise cases that were transferred from "home" districts of filing by the MDL panel and others that were "direct filed" in the Northern District without undergoing the formal transfer process. All of the New York cases set for trial in the instant "bellwether" case were "direct filed." But for the possibility of a "global waiver" of personal jurisdiction, the Northern District had no claim to personal jurisdiction over the cases: none of the plaintiffs' surgeries occurred in Texas; the plaintiffs aren't Texas residents; and neither general nor specific jurisdiction exists over the petitioners for purposes of these disputes. For that reason, the district court relied solely on the "global waiver" and extended it from a waiver of venue for pretrial purposes only and for two bellwether trials to waiver of personal jurisdiction in all of the thousands of cases. Petitioners are being forced to trial over their objections to personal jurisdiction.

By comparison, a scholarly opinion from the Southern District of Texas in an MDL case resulted in dismissal of a nonresident defendant against which there was a "direct filed" case by a nonresident plaintiff. *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, No. CIV.A. H-10-171, 2011 WL 1232352 (S.D. Tex. Mar. 31, 2011). The court first noted that the

17

No. 17-10812

defendant's agreement to transfer for purposes of pretrial proceedings was not inconsistent with and did not waive its personal jurisdiction challenge. 2011 WL 1232352 at *5–6. Finding no waiver, the court then decided that it lacked personal jurisdiction over the non-consenting defendant based on Heartland's lack of minimum or relevant contacts with the Southern District of Texas. 2011 WL 1232353 at *6–10. *In re Heartland* is contrary to this case, in that the district court here ignored the limitations on the parties' agreed order for direct filing. That order expressly states that, "[u]pon completion of all pretrial proceedings applicable to a case filed directly in the [MDL court], this Court may transfer the case, pursuant to 28 U.S.C. Section 1404, to a court of *appropriate jurisdiction for trial.*" (emphasis added). Moreover, the inclusion of any action in the MDL proceeding under the order's auspices "shall not constitute a determination by this Court that jurisdiction or venue is proper in this District." The petitioners' failure to waive personal jurisdiction, as the panel majority hold, means that the district court is asserting "reach out and touch someone" power wholly at odds with its Constitutional and statutory limitations. *See Point Landing, Inc. v. Omni Capital Int'l, Ltd.*, 795 F.2d 415, 423 (5th Cir. 1986) (en banc) ("[federal courts] must ground their personal jurisdiction on a federal statute or rule. As courts of limited jurisdiction, the federal courts possess no warrant to create jurisdictional law of their own.") (internal citation and quotations omitted).

This is where I begin to differ with the majority's holding that petitioners have an adequate remedy in a pending appeal of the third bellwether trial arising from California plaintiffs, some of whom direct-filed in the Northern District. I agree that mandamus relief should only be granted in unique situations and must be used "sparingly and with utmost care." *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1021 (5th Cir. 1997) (Jones, J. concurring). But this is not simply a case in which reasonable minds can differ over the court's

finding of waiver. Nor is the irreparable harm alleged by the petitioners simply the cost of trying and possibly appealing the judgment from another set of bellwether plaintiffs, although that will be more millions of dollars. *See In re Lloyd's Register North America, Inc.,* 780 F.3d 283, 295 (5th Cir. 2015) (when the issues in mandamus have significant ramifications, the pendency of another appeal in this court strengthens the case for mandamus relief).

The Supreme Court has stated that "[t]hese hurdles [to the issuance of mandamus relief], however demanding, are not insuperable." *Cheney v. U.S. Dist. Court for D.C.,* 542 U.S. 367, 381, 124 S. Ct. 2576, 2587 (2004) (granting writ). There are numerous ongoing ramifications of the court's erroneous decision that harm not only these petitioners but, importantly, the plaintiffs in these 9,000+ cases.

First, when a court plainly acts in excess of its jurisdiction, mandamus may issue to prevent the usurpation of power. *Abelesz v. OTP Bank*, 692 F.3d 638, 653 (7th Cir. 2012) ("If there were a colorable argument supporting the district court's exercise of jurisdiction, we would view this case differently. The overwhelming clarity of this issue, however, calls for use of the extraordinary writ of mandamus to confine the district court to the proper exercise of its jurisdiction"); *see also In re Impact Absorbent Techs., Inc.,* 106 F.3d 400 (6th Cir. 1996) ("[a]lthough uncorrectable damage may not result if petitioners are forced to wait for a remedy on direct appeal, the clearly erroneous nature of the district court's order calls for a more immediate remedy."); *see also Holub Indust., Inc. v. Wyche*, 290 F.2d 852, 856 (4th Cir. 1961). Ordinary appeal can be an inadequate remedy if the "challenged assumption or denial of jurisdiction" is "so plainly wrong as to indicate failure to comprehend or refusal to be guided by unambiguous provisions of a statute or settled common law doctrine." *Am. Airlines v. Forman*, 204 F.2d 230, 232 (3rd Cir. 1953).

Second, the lack of personal jurisdiction is not the only problem here, because petitioners' issues necessarily embrace improper venue. Where there is no personal jurisdiction over the petitioners, the trial is in an improper venue. Moreover, petitioners note they never consented to waive venue for any proceedings beyond the pretrial stage of these cases. The majority's focus on the alleged sufficient remedy for lack of jurisdiction in the pending appeal overlooks that where venue is improper, this court has held that appeal is an inadequate remedy rendering the grant of mandamus relief mandatory. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 319 (5th Cir. 2008) (en banc) ("an appeal will provide no remedy for a patently erroneous failure to transfer venue"); *In re Ford Motor Co.*, 591 F.3d 406, 416 (5th Cir. 2009) (same).

Third, the appellate remedy is inadequate when the error the parties are subjected to will be repeated. "Mandamus is particularly appropriate here because of the potential for the trial court to repeat" its error. *Journal Pub. Co. v. Mechem*, 801 F.2d 1233, 1237 (10th Cir. 1986) (writ granted). The district court has misinterpreted the petitioners' case-specific waivers to hold that it may potentially try all 9,000+ cases in the Northern District of Texas, no matter their lack of any connection with this state, much less its district. As confirmed by plaintiffs' counsel in oral argument, that is what the court means by a "global waiver." Even though a curiously timed late-breaking order of the trial court states that no further bellwether trials will occur, this does not signal a retreat from its holding that a "global waiver" occurred. Nor does the order retreat from the court's repeated refusals to slow down its processes while the appeal of jurisdiction in the third bellwether set of cases is taking place. Repetition, or surely threatened repetition, of its error, manifestly deserves correction at the earliest moment.

Fourth, the appellate remedy is inadequate where the court's error is likely to affect cases beyond those before us. "Writs of mandamus are

supervisory in nature and are particularly appropriate when the issues also have an importance beyond the immediate case." *In re Volkswagen*, 545 F.3d at 319. Such effects are foreordained where the court is managing thousands of cases and the usual object of MDL management, especially with bellwether trials, is to incentivize rational settlements. Even though the third and fourth grouped bellwether cases have been tried without proper venue or jurisdiction, and the results from an unauthorized forum may be skewed in numerous ways, their impact on the parties' settlement approaches cannot be denied. The pressure to settle will be ongoing until final resolution of an appeal in this court or even in the Supreme Court. That a court's patent errors can compound into unjust settlements is well recognized and has led courts to find mandamus a necessary remedy even where a possibility of ultimate appellate relief exists. *Abelesz*, 692 F.3d at 652–53. The undeniable pressure on defendants to settle is a reality in these alleged mass tort cases.

Fifth, the appellate process in both the third and fourth grouped bellwether cases will extend for several years. Briefing will not even begin until the end of September 2017 in the third such case. One may reasonably predict that this court's processes, even without en banc review, would not conclude until the end of 2018 at best. The certiorari process would extend for many months thereafter. Concomitantly, the parties may be pursuing appeal in the fourth grouped bellwether cases, the subject of this petition, leading to various potential interactions between the two appeals in this court. Thus, it is unlikely that the "sufficient" appellate process will have concluded before 2019 or 2020. Suppose the petitioners, who have allegedly denied any intention to settle, pursue this lengthy process? In the meantime, what happens to the 9,000+ plaintiffs in this litigation that began in 2011?

The majority's decision to deny relief overlooks the impact on the plaintiffs. If the district court lacked jurisdiction over these direct-filing

plaintiffs' cases, as our panel majority concludes, they will receive a take-nothing judgment nearly a decade after their suits were filed and will have to start all over—if they have the stomach for it.  For the remaining thousands, the goal of the bellwether process will have been perverted by unreliable judgments, delayed by the appeals, and undermined when those judgments are reversed.  Allowing the court's conduct of trials outside its jurisdiction to spawn such unpredictability and unfairness will harm petitioners or plaintiffs and most likely both.  Such an outcome belies the goals of efficiency, economy, fairness, and predictability for which the MDL system supposedly exists.  *See* 28 U.S.C. § 1407(a) ("[T]ransfers shall be made by the [MDL panel] upon its determination that transfers for such [pretrial] proceedings…will promote the just and efficient conduct of such actions").

A final word about Judge Costa's separate opinion.  First, we do not owe "double deference" to the district court even if (and Judge Smith's opinion takes no firm position on this) the question of waiver of personal jurisdiction should be reviewed for abuse of discretion on appeal.  Judge Smith's opinion emphasizes that the "mandatory language [of Section 1407] creates a powerful presumption in favor of remand . . . ," hence the "clear and unequivocal" standard for a *Lexecon* waiver.  The record, viewed in its proper context, does support the wholesale abrogation of petitioners' remand rights and assumption of jurisdiction that the district court did not have.  Second, mandamus relief can be justified when courts must address new or evolving legal issues.  *See, e.g., United States v. Horn,* 29 F.3d 754, 770 (1st Cir. 1994);  *see also* 16 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Juris. Section 3934.1 (3d Ed. 2004 & Supp. 2017).  Finally, for my own part, I am not concerned about the "centralizing power" inherent in MDL proceedings when they are confined, as the statute says, to *pretrial* matters or to bellwether cases to which both parties have expressly and unequivocally consented.  I am even less concerned

about the "centralized power" of federal appellate judges when the downside of withholding such power, as I have shown, is the district court's abuse of its limited jurisdiction, waste of trial resources, huge expenditure of legal resources on utterly unnecessary jurisdictional wrangling, and ultimately, the forfeiture of public confidence in a system that can achieve neither efficiency nor economy in handling mass tort cases.

The issuance of a writ in this unique case, a "bellwether" for thousands more, would do what the writ was intended to do—confine the district court to a lawful exercise of its prescribed jurisdiction. *See Cheney,* 542 U.S. at 380, 124 S. Ct. at 2576. I respectfully dissent from the denial of relief ordering the district judge not to try the instant grouped cases over which he lacks personal jurisdiction.