JERRY E. SMITH, Circuit Judge:
Lloyd’s Register North America, Inc. (“LRNA”), was the classification society responsible for certifying a ship that Irving Shipbuilding, Inc. (“Irving”), was building for Pearl Seas Cruises, LLC (“Pearl Seas”). Pearl Seas was dissatisfied with *287 the ship and engaged in several years of arbitration and litigation with Irving. After those proceedings had concluded, Pearl Seas sued LRNA under various tort theories regarding LRNA’s allegedly inadequate performance in certifying the ship and its alleged misdeeds during arbitration.
LRNA moved to dismiss on the ground at forum non conveniens (“FNC”), claiming that a forum-selection clause in the Lloyd’s Register Rules and Regulations for the Classification of Ships (the “LR Rules”) and in the contract between LRNA and Irving required Pearl Seas to bring the claims in England. The district court denied the motion to dismiss without written or oral explanation. LRNA petitions for a writ of mandamus to direct the court to vacate its denial and dismiss for FNC. Because the district court clearly abused its discretion and reached a patently erroneous result, and because LRNA has no way effectively to vindicate its rights without a writ of mandamus, we grant the petition.
I.
The following facts are taken from Pearl Seas’ First Amended Complaint. Pearl Seas and LRNA communicated in 2006 about LRNA’s potentially providing classification services for the vessels Pearl Seas would be operating. Those classification services would require LRNA to certify that the ship complied with certain standards, including the requirements of the ship’s flag state (the Marshall Islands) and the classification society’s own rules. Pearl Seas agreed that LRNA would be the classification society for its ships.
Later in 2006, Pearl Seas entered into a contract (the “Shipbuilding Contract”) with Irving under which Irving would build a ship for Pearl Seas. LRNA then entered into a contract (“Classification Contract”) with Irving under which LRNA would survey the ship during construction, ensuring that it complied with the rules and regulations specified in the Shipbuilding Contract, including the LR Rules. As construction continued, disputes arose between Irving and Pearl Seas. Irving invoked the arbitration clause in the Shipbuilding Contract in 2008, and contentious arbitration continued until Irving and Pearl Seas settled in 2013.
II.
Pearl Seas sued LRNA in the court a quo in late 2013, alleging fraud, gross negligence, negligent misrepresentation, collusion, aiding and abetting, civil conspiracy, and promissory estoppel in tort. Each cause of action is essentially based on the theory that LRNA misrepresented the status of the vessel to Pearl Seas and to the arbitrators.
LRNA moved to dismiss for FNC, seeking enforcement of two forum-selection clauses that it said required the action to be brought in England. The first appears in the LR Rules and reads, “Any dispute about the Services or the Contract is subject to the exclusive jurisdiction of the English courts and will be governed by English law.” The second appears in the Classification Contract between LRNA and Irving and reads, “Any dispute, claim, or litigation between any member of the LR Group and the Client arising from or in connection with the Services provided by LR shall be subject to the exclusive jurisdiction of the English courts and will be governed by English law.” Irving claimed that both of these clauses prevented Pearl Seas from bringing this suit in Texas.
Pearl Seas maintained that neither applied, because Pearl Seas was not a signatory to any agreement containing a forum- *288 selection clause. The district court held a hearing in which it questioned the parties about numerous matters, including the motion to dismiss for FNC. A few weeks later, the court issued an order denying several of the motions to dismiss and the plaintiffs motion for in camera inspection. The court “explained” its decision in one sentence: “Having considered the motions, submissions, and applicable law, the Court determines that all motions should be denied.”
III.
To be entitled to the extraordinary remedy of mandamus, LRNA has to satisfy three requirements. First, it must have “no other adequate means to attain the relief [it] desires.” Cheney v. U.S. Dist. Court for Dist. of Columbia, 542 U.S. 367, 380, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004). Second, it has to show a “clear and indisputable” right to the writ. Id. at 381, 124 S.Ct. 2576. And third, the court “must be satisfied that the writ is appropriate under the circumstances.” Id.
A.
First, LRNA must show that it has no other “adequate means.” The writ is not “a substitute for the regular appeals process,” id. at 380-81, 124 S.Ct. 2576, so LRNA must show that an ordinary appeal is inadequate. This requirement is satisfied: The usual appeals process does not provide an effective way to review a denial of a motion to dismiss for FNC. Immediate appellate review of the decision to deny is rarely available, and review after final judgment is ineffective to vindicate a wrongfully denied motion for FNC.
There is no adequate way immediately to review a denial of FNC. It is not reviewable under the collateral-order doctrine. Van Cauwenberghe v. Biard, 486 U.S. 517, 527, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988). The defendant has the option of seeking leave for an interlocutory appeal under 28 U.S.C. § 1292(b), which is available only in limited circumstances. The question to be certified must be “a controlling question of law as to which there is substantial ground for difference of opinion,” 28 U.S.C. § 1292(b), and even if it- is, both the district court and the court of appeals must agree to permit the appeal. See Gonzalez v. Naviera Neptuno A.A., 832 F.2d 876, 881 n. 5 (5th Cir.1987). Other courts of appeals that have considered the question have come to the same conclusion: Section 1292(b) is not an adequate substitute for mandamus.[1]
LRNA is without adequate means to review the denial when the order is entered, but we must also evaluate whether the ordinary appeals process is otherwise adequate. That is a difficult requirement to satisfy. In most cases, relief from a potentially erroneous interlocutory order is available by appeal after final judgment. Even though the defendant may be required to engage in a costly and difficult trial and expend considerable resources before the court enters an appealable judgment, those unrecoverable litigation costs are not enough to make this means of attaining relief inadequate. See Roche v. Evaporated Milk Ass'n, 319 U.S. 21, 29-30, 63 S.Ct. 938, 87 L.Ed. 1185 (1943). *289 There has to be a greater burden, some obstacle to relief beyond litigation costs that renders obtaining relief not just expensive but effectively unobtainable. Under Volkswagen, a defendant’s entitlement to FNC ordinarily cannot adequately be vindicated through the regular appeals process.
In Volkswagen, we were faced with a mandamus petition regarding a denial of a motion to transfer venue. We held that the ordinary appeals process would not provide an adequate remedy for the erroneous decision not to order transfer. Two factors that we found convincing in the venue-transfer context are present here. First, a defendant is unlikely to be able to satisfy an appellate court, after final judgment, that a failure to transfer venue was sufficiently prejudicial as to be outcome-determinative. And second, the very harm sought to be avoided by transferring venue — “inconvenience to witnesses, parties and other” — will have worked irreversible damage and prejudice by the time of final judgment. Volkswagen, 545 F.3d at 319. Each of these reasons applies with equal force in the FNC context.
On appeal from a final judgment, the improper failure to transfer venue is effectively unreviewable. The defendant would be in the unenviable position of having to show that “it would have won the case had it been tried in a convenient [venue].” Id. at 318-19 (citation omitted). The same ineffectiveness of review characterizes the denial of an FNC motion: If it is denied and the case proceeds through trial, the denial will not be considered reversible error “unless the moving party can demonstrate great prejudice arising from trial in the plaintiffs chosen forum.” McLennan v. Am. Eurocopter Corp., 245 F.3d 403, 423-24 (5th Cir.2001). Such a standard does not provide adequate post-judgment review.[2] When one considers the instruction in Atlantic Marine that the private-interest factors of FNC analysis should automatically be weighed in favor of enforcing a forum-selection clause,[3] it is especially inapposite to force parties to rely on post hoc appellate evaluations of whether the clause was worth bargaining for.
Even if the standard of review were such that a defendant could convince an appeals court that the error justified reversal, we acknowledged in Volkswagen that the harm done by going through trial to final judgment would not be remediable on appeal. Unrecoverable litigation costs do not make review after final judgment inadequate, see Roche, 319 U.S. at 29-30, 63 S.Ct. 938, but the damage inflicted by the refusal to enforce a forum-selection clause is different from the costs that defendants face as a matter of course after denial of a motion that would otherwise terminate the litigation. The “inconvenience to witnesses, parties and other[s],” Volkswagen, 545 F.3d at 319, is one of the factors weighed in determining whether an FNC motion should be granted. An FNC motion- — -like the venue-transfer motion at issue in Volkswagen — is a motion that asserts those damages are too high to justify trying the case where it was filed. If the matter must first proceed to final judg *290 ment before the denial of that assertion is evaluated, then the damage will always already be done. And “the prejudice suffered cannot be put back in the bottle.” Id.
There is no reason to distinguish between the normal appeals process in the venue-transfer context, which we found lacking in Volkswagen, and that same process in the context of FNC. The first requirement for mandamus relief is therefore satisfied.
B.
The second requirement for mandamus relief is that the petitioner has a “clear and indisputable” right to it. Cheney, 542 U.S. at 381, 124 S.Ct. 2576. In recognition of the extraordinary nature of the writ, we require more than showing that the court misinterpreted the law, misapplied it to the facts, or otherwise engaged in an abuse of discretion. And even reversible error by itself is not enough to obtain mandamus. See Volkswagen, 545 F.3d at 309-10. Rather, we limit mandamus to only “clear abuses of discretion that produce patently erroneous results.” Id. at 310. We therefore must determine whether there was a clear abuse of discretion and whether the court reached a patently erroneous result. Because we determine that both of these conditions are satisfied, this requirement for mandamus is met.
1.
In distinguishing between ordinary and “clear” abuses of discretion, we are guided by the principle reiterated in Volkswagen that mandamus must not become a means by which the court corrects all potentially erroneous orders. See id. at 309 (citing Will v. United States, 389 U.S. 90, 98 n. 6, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967)). A court commits a clear abuse of discretion, however, when it “clearly exceeds the bounds of judicial discretion.” Id. at 310. The district court’s failure to provide an explanation of its denial of LRNA’s motion clearly exceeded the bounds of judicial discretion given the facts and circumstances present here.
It is an abuse of discretion for a district court to grant or deny a motion to dismiss without written or oral explanation[4] or where, in ruling- on a motion to dismiss for FNC, it “fails to address and balance the relevant principles and factors of the doctrine of [FNC].”[5] The district court provided no written or oral explanation for its decision.
In its response to the petition for mandamus, Pearl Seas claims that the court did not abuse its discretion because Pearl Seas provided an adequate legal and factual basis for denial in its brief, and the court indicated at a hearing that it “had reviewed the briefs and was well aware of the issues.” That notion is unavailing. An explanation must be generated by the court, not inferred by the appellate court from the submissions of the parties. A contrary rule would require us to guess the basis for the decision without guidance, essentially reducing us to the role of replacing the district court’s discretion with *291 our own in violation of Volkswagen, 545 F.3d at 312.
The transcript of the July 17 hearing is likewise insufficient to satisfy the requirement of a written or oral explanation. The court specifically said that it had not yet decided the question of the forum-selection clause and offered no conclusion as to its applicability or the propriety of granting or denying the motion to dismiss. Whether the court’s questions indicated that it understood the law and the briefings is immaterial.
Even though the court’s failure to explain its decision is an abuse of discretion, that is not enough: It must be a “clear” abuse of discretion. That strict requirement is satisfied here. Denying dismissal without explanation and without any visible weighing of the factors of FNC takes the decision entirely outside the scope of judicial discretion, giving the parties and reviewing courts no way of understanding how the court reached its conclusion and providing no assurance that it was the result of conscientious legal analysis.
2.
We now turn to whether the district court reached a “patently erroneous result.” Because the court failed to enforce a valid forum-selection clause, it did patently err.
a.
The first question is whether the forum-selection clause applies to this case. Pearl Seas is not a signatory to the contract between Irving and LRNA, but there are settled standards under which a non-signatory can be held to the terms of the contract. The doctrine on which the parties focus is the one that applies here: direct-benefits estoppel.
Direct-benefits estoppel holds a non-signatory to a clause in a contract if it “knowingly exploits the agreement” containing the clause. Bridas S.A.P.I.C. v. Gov’t of Turkmenistan, 345 F.3d 347, 361-62 (5th Cir.2003). We have identified two specific ways in which a non-signatory can be bound under this theory. First, it may be bound “by knowingly seeking and obtaining ‘direct benefits’ from that contract.” Noble Drilling Servs., Inc. v. Certex USA, Inc., 620 F.3d 469, 473 (5th Cir. 2010). Second, it may be bound “by seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract.” Id. Direct-benefits estoppel binds Pearl Seas to the forum-selection clause under the first method.[6]
To invoke direct-benefits estoppel under this theory, LRNA first must show that Pearl Seas knowingly exploited the contract during the contract’s existence. Id. Pearl Seas must have known about the existence of the contract and its terms, see id. at 473-74, and acted to exploit that contract. Second, Pearl Seas must have obtained some benefit under the contract. See id. at 473. Because Pearl Seas knew about the contract between Irving and LRNA, acted to exploit it, and gained a benefit from it, Pearl Seas is bound by the forum-selection clause in the Classification Contract.
Pearl Seas’ own complaint shows that it was aware of the existence of the Classification Society from the beginning of its relationship with LRNA. The Shipbuilding Contract required Irving to get a classifi *292 cation service that would provide the services at issue here, and Pearl Seas selected LRNA to provide the classification services for the ship. LRNA’s performance was for the benefit of Pearl Seas, and the complaint describes LRNA as carrying out those duties and communicating with Pearl Seas. Pearl Seas’ pleadings lead inexorably to the conclusion that it was aware of the Classification Contract and some' of its ba-. sic terms, namely, ensuring compliance with particular regulatory requirements in anticipation of a sale to Pearl Seas.
Additionally, Pearl Seas stated that it learned of the Classification Contract’s content after arbitration had begun, which happened in early 2008. Pearl Seas contends that receipt of a contract during arbitration does not trigger direct-benefits estoppel. LRNA was not a party to the arbitration, however, and much of the alleged wrongful conduct took place after the arbitration had begun.
If a nonsignatory receives a copy of a heretofore-unknown contract for the first time when it sues a signatory, that mid-litigation revelation likely is not enough for knowing exploitation of the contract under this version of direct-benefits estoppel. See id. at 473-74. But what matters is that Pearl Seas did in fact learn of the Classification Contract’s content before much of the alleged wrongdoing and before this litigation between Pearl Seas and LRNA.[7] The knowledge test does not focus on the intent of the party providing information and would be equally met if Pearl Seas had received a copy of the contract after its agent had found a copy stuck to the bottom of his shoe.
LRNA must also show that Pearl Seas has received a direct benefit under the contract. Id. at 473. LRNA was performing its services for the benefit of Pearl Seas, examining the ship and communicating with Pearl Seas in the course of administering classification services. Indeed, Pearl Seas’ own complaint repeats the Otto Candies[8] rule for negligent-misrepresentation claims against classification societies: LRNA provided its classification services knowing they were for the “guidance and benefit” of Pearl Seas.[9] And the complaint makes plain that LRNA did actually perform such services and provided reports directly to Pearl Seas as well. This likewise satisfies the requirement that Pearl Seas, in addition to knowing about the contract, has exploited or embraced it during the life of the contract; Pearl Seas actively participated in ensuring that the parts of the contract benefiting it were performed.[10]
Pearl Seas contends that it did not receive a benefit because LRNA’s performance was deficient. Unlike the situation in Hellenic, Pearl Seas did not receive the certification that was necessary to operate. Even if we assume that LRNA’s performance was deficient, however, that partial *293 performance was still a direct benefit to Pearl Seas. If LRNA had not performed under the contract at all, or had performed only those parts that did not benefit Pearl Seas, then this requirement of direct-benefits estoppel would not be met. But merely alleging that a benefit was deficient or outweighed by the negative aspects of the signatory’s actions does not mean that no benefit was received.[11]
Pearl Seas also urges that direct-benefits estoppel cannot apply because the Classification Contract disclaims liability to, and enforceability by, third parties. But reciprocity and mutual enforceability are not requirements for direct-benefits estoppel, and Pearl Seas cites no authority that supports its position. Indeed, in its brief Pearl Seas at times discusses the doctrine of third-party beneficiary.
As this court has recognized, third-party beneficiary and direct-benefits estoppel are distinct doctrines. Third-party beneficiary doctrine looks at what the parties intended when they executed the contract, whereas direct-benefits estoppel looks at the actions of the parties after the contract was executed. See Bridas, 345 F.3d at 362 (quotation omitted). If we interpreted direct-benefits estoppel to require that the parties demonstrate an intention at the contracting stage to create a third-party beneficiary, we would eliminate this distinction and collapse the doctrines.
Finally, Pearl Seas avers that LRNA cannot rely on direct-benefits estoppel because Pearl Seas alleged fraud, and this denies LRNA the benefit of equitable remedies. Pearl Seas provides no binding or persuasive authority for the proposition that a plaintiff can deny a defendant access to equitable remedies just by alleging fraud, especially where the fraud is unrelated to the applicability of the equitable doctrine. Pearl Seas does not assert that the claimed fraud played any role in bringing it within the scope of the forum-selection clause or allowed LRNA to hide any inequitable behavior behind a shield of equity. We decline to render direct-benefits estoppel inoperative by stating that an allegation of a defendant’s wrongdoing is sufficient to deny the application of this clause.
b.
As the foregoing explanation shows, the forum-selection clause in the Classification Contract does apply to Pearl Seas’ action against LRNA. That, however, is not the end of our analysis of whether LRNA has a “clear and indisputable” right to mandamus. Given that the forum-selection clause applies, we must determine whether the district court should have dismissed the complaint in accordance with that clause. In light of the Supreme Court’s instructions in Atlantic Marine, the court erred when it denied the motion to dismiss.
Atlantic Marine laid out the process courts must follow in ruling on an FNC motion that seeks to enforce a valid forum-selection clause. Instead of independently weighing the private interests of the parties, the court should “deem the private-interest factors to weigh entirely in favor of the preselected forum.” Atl. Marine, 134 S.Ct. at 582. The court must then weigh the public-interest factors, which include “the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in *294 having the trial of a diversity case in a forum that is at home with the law.” Id. at 581 n. 6 (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 n. 6, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)). The plaintiffs choice of forum will not be given any weight, unlike in the ordinary FNC context. Id. at 581. The Supreme Court allows for the possibility that a court may properly refuse to grant the motion despite a valid forum-selection clause, but the forum-selection clause will prevail except in “unusual cases.” Id. at 582.
Pearl Seas has not identified any factors that render this motion one of those unusual cases. In its response to LRNA’s mandamus petition, Pearl Seas contends that Texas is the proper forum because the court needs to establish “uniform rules of conduct applicable to corporate entities in Texas,” because some communications originated in Texas, and because LRNA is the defendant in a similar lawsuit in a Texas federal court. Those considerations are not enough to make enforcement of the forum-selection clause invalid.[12]
Pearl Seas raises additional concerns in its opposition to the mandamus petition. It theorizes that it would face “extreme juridical disadvantages in an English forum,” but it does not identify what those disadvantages would be. Pearl Seas points out that the Fifth Circuit permits negligent misrepresentation claims against classification societies, but it does not show that the remedies in English courts would be lacking. Pearl Seas claims that dismissing for FNC would deprive the plaintiff of available Texas and U.S. remedies and would therefore violate public policy, but it does not point to a remedy that would be unavailable in England. Pearl Seas fails to show why this is the exceptional case in which a valid forum-selection clause should not be enforced.
In sum, the district court committed a clear abuse of discretion when it exceeded its judicial power and denied the FNC motion without explanation. The court, with the best of intentions, then reached a patently erroneous result when it declined to enforce a valid forum-selection clause. LRNA has a “clear and indisputable” right to issuance of the writ.
C.
The third requirement for mandamus is that we are satisfied that it “is appropriate under the circumstances.” Cheney, 542 U.S. at 381, 124 S.Ct. 2576. Because the writ is “supervisory in nature,” we consider it especially appropriate where its issuance will have significance “beyond the immediate case.” Volkswagen, 545 F.3d at 319. There is already an appeal pending from another case on this issue in the Fifth Circuit, and it is possible that more will be forthcoming now that the Supreme Court has strengthened the enforcement of forum-selection clauses in Atlantic Marine.
The petition for writ of mandamus is GRANTED.
JENNIFER WALKER ELROD,

. See In re Roman Catholic Diocese of Albany, N.Y., Inc., 745 F.3d 30, 36 (2d Cir.2014); In re Kellogg Brown & Root, Inc., 756 F.3d 754, 761 (D.C.Cir.2014). In In re Volkswagen of America, Inc., 545 F.3d 304, 319 (5th Cir. 2008) (en banc), the court did consider the unavailability of § 1292(b) certification to be relevant in concluding that a denial of a venue-transfer motion qualified for mandamus relief. That does not mean, however, that § 1292(b) by itself provides sufficient review when it is available.

. See Volkswagen, 545 F.3d at 318-19; see also In re Ford Motor Co., 591 F.3d 406, 416 (5th Cir.2009) (on petition for rehearing) ("[I]n these FNC cases, mandamus is appropriate on this prong because, if the issue is argued only on any eventual direct appeal, there is no way to show that the outcome of the case would have been different, and any inconvenience to the parties 'will already have been done by the time the case is tried and appealed.’ ” (quoting Volkswagen, 545 F.3d at 318-19)).

. See Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex., -— U.S.-, 134 S.Ct. 568, 582, 187 L.Ed.2d 487 (2013).

. See In re Air Crash Disaster Near New Orleans, La., 821 F.2d 1147, 1166 (5th Cir.1987) (en banc), vacated on other grounds sub nom. Pan Am. World Airways, Inc. v. Lopez, 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1989), reinstated in part by In re Air Crash Disaster Near New Orleans, La., 883 F.2d 17 (5th Cir.1989) (en banc).

. Id. at 1166-67; cf. Rose v. Hartford Underwriters Ins. Co., 203 F.3d 417, 420 (6th Cir. 2000) ("Because the district court [decided a] motion without explanation, it has clearly abused its discretion in this case.”).

. Because the forum-selection clause from the Classification Contract binds Pearl Seas under this rule of direct-benefits estoppel, we need not determine whether the clause in the LR Rules also binds Pearl Seas, nor whether the second form of direct-benefits estoppel is satisfied here.

. Pearl Seas’s brief and pleadings do not make clear exactly when it received a copy of the Classification Contract but show that it happened after arbitration had begun.

. Otto Candies, L.L.C. v. Nippon Kaiji Kyokai Corp., 346 F.3d 530 (5th Cir.2003).

. Id. at 535; see Hellenic Inv. Fund, Inc. v. Det Norske Veritas, 464 F.3d 514, 519 (5th Cir.2006) ("Any lingering doubt whether Hellenic garnered a benefit from [the classification society's] performance of the [ ] contract is erased by Hellenic's own statements in its complaint: '[the classification society] knew, or should have known,' that its representations 'were intended for [Hellenic]'s guidance and benefit in a business transaction.'") (fourth modification in original).

. See Noble Drilling, 620 F.3d at 473; E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S., 269 F.3d 187, 200 (3d Cir.2001).

. See Hellenic, 464 F.3d at 519; Blaustein v. Huete, 449 Fed.Appx. 347, 350 (5th Cir.2011) (per curiam).

. Additionally, the other LRNA case that was pending in Texas has since been dismissed for FNC. See Vloeibare Pret Ltd. v. Lloyd’s Register N. Am., Inc., No. 4-13-3653, 2014 WL 3908195 (S.D.Tex. Aug. 8, 2014). Even if the dismissal in that suit is reversed on appeal, we have limited Atlantic Marine’s applicability in multi-party litigation only where a single case involves parties both with and without valid forum-selection clauses. See In re Rolls Royce Corp., 775 F.3d 671, 679 (5th Cir.2014).