JERRY E. SMITH, Circuit Judge:
This petition for writ of mandamus arises from a multidistrict litigation (“MDL”) proceeding involving more than 9,300 plaintiffs.[1] Those plaintiffs have brought product-liability claims against petitioners for designing, manufacturing, and distributing an allegedly defective hip-implant device, the Pinnacle Acetabular Cup System (the “Pinnacle Device”).[2] The MDL court denied petitioners’ motions to vacate an order and dismiss certain eases for lack of personal jurisdiction.[3]
We have reviewed the petition for writ of mandamus, the opposition thereto, petitioners’ reply in support of the writ, the exhibits attached to those submissions, and the applicable law. We also have heard one hour of oral argument on the petition. Despite finding serious error, a majority of this panel denies the writ that petitioners seek to prohibit the district court from proceeding to trial on plaintiffs’ cases.[4] A *348 different majority holds (1) that so-called Lexecon[5] objections were not waived and that the district court abused its discretion in finding waiver; (2) that the petitioners have shown the required clear and indisputable right to a writ of mandamus; and (3) that the petitioners have established that a writ of mandamus is appropriate under the circumstances. But in regard to the ultimate result, 'a majority concludes that the petitioners have not shown that they have no other adequate means to attain the relief they seek. A majority requests the district court to' vacate' its ruling on waiver and to withdraw its order for a trial beginning September 6, 2017.
I.
The MDL proceeding began in 2011, when the Judicial Panel on Multi-district Litigation ordered the transfer of all actions involving the Pinnacle Device into the MDL court in the Northern District of Texas.[6] Later, the MDL court issued an order allowing Pinnacle Device plaintiffs to file directly in that district.[7]
An MDL court can conduct pretrial proceedings but cannot try a case that it would not be able to try without its MDL status. Federal law limits an MDL court’s jurisdiction over a transferred case to pretrial proceedings- and provides that once those are completed, the MDL. court must remand the transferred case to the district from which it was transferred.[8] Cases that are directly filed in an MDL court are treated “as if they were transferred from a judicial district sitting in the state where the case originated.”[9] An MDL court can try a case where venue is improper if the parties waive their objections. .Such waivers are known as “Lexecon waivers.”
In August 2012, the MDL court entered Case Management Order 8 (“CMO 8”) directing the parties to “submit ... a stipulated protocol for selection and conducting of bellwether trials in this MDL proceeding” and then “file their recommended selection of 4-6 cases to be included in an initial bellwether trial process.”[10] Bellwether trials are meant to
produce a sufficient number of representative verdicts and settlements to enable the parties and the court to determine the nature and strength of the claims, whether they can be fairly developed and litigated on a group basis, and what range of values the cases may have if *349 resolution is attempted on a group basis.[11]
The parties worked with the court and the special master to develop a protocol for bellwether trials.[12] - ■
The special master produced a report that included a proposal, agreed to by the parties, to try four cases from a pool of eight.[13] The report stated that “Defendants’ Lead Counsel have already agreed that they will not raise a venue objection (i.e., a Lexecon objection) to any cases in the MDL proceeding being tried in the Northern District of Texas.”[14], ■
The' process became contentious when plaintiffs proposed to consolidate multiple cases for each bellwether trial. Petitioners objected, claiming that they did “hot agree to waive their Lexecon objections for a prejudicial, multi-plaintiff trial.”[15] A few days later, petitioners clarified that “we have waived the [Lexecon ] restriction, on ... these cases, consistent with the report that the special master gave to the court earlier.”[16]
The first trial, involving a single case transferred from the District of Montana, was held in September and October 2014.[17] The jury found for petitioners.[18]
After the first trial, the parties and the court proceeded to select a new set of béllwether cases.[19] The special master noted again that “Defendants have agreed they will not raise a venue objection (Le;, a Lexecon objection) to any cases in the MDL being tried in the Northern District of Texas.”[20]
The court selected five cases,- all directly filed by Texas plaintiffs, and ordered that they be tried together in a consolidated second bellwether trial.[21] Defendants objected to the consolidation but not on grounds of venue or personal jurisdiction.[22] The trial was held in early 2016.[23] The jury returned a $502 million verdict, which the court reduced.[24] Petitioners appealed.[25]
Petitioners moved to stay future "bellwether trials pending the appeal. In a footnote to their brief urging a stay, they claimed that “[although [they] previously waived Lexecon for purposes of selecting prior bellwether cases, they have never agreed to a blanket Lexecon waiver and do not waive their venue objections with respect to forthcoming trials.”[26] The court denied a stay and stated that petitioners had already waived their venue objections to trying cases in the MDL court.[27]
In June 2016, the MDL court selected six cases, all directly filed by California *350 plaintiffs, for a third bellwether trial.[28] Petitioners unsuccessfully moved to dismiss for want .of personal jurisdiction and reiterated their claim that they had waived their venue objections only with respect to the first two bellwether trials.[29] The trial was held in September and October 2016, and the jury returned a $1.04 billion verdict, which the court reduced.[30] Petitioners appealed.[31]
In November 2016, the MDL court issued an order' selecting ten cases with New York plaintiffs for a fourth bellwether trial.[32] Petitioners moved to vacate the order and dismiss the claims for lack of personal jurisdiction, reiterating their assertions about waiver.[33] In June 2017, the court denied both motions, finding that petitioners had “clearly and unequivocally represented to this Court on multiple occasions that they waived any objections based on venue to trying any of the cases in the MDL in the Northern District of Texas.”[34] The MDL court intends to try some of the New York cases in a fourth bellwether trial scheduled to begin on September 5, 2017.[35] Petitioners naturally ask this court to rule before then.
II.
A writ of mandamus is “a drastic and extraordinary remedy reserved for really extraordinary causes.”[36] It “is not a substitute for an appeal.”[37] Only a showing of “exceptional circumstances amounting to a judicial usurpation of power” or “a clear abuse of discretion” will justify granting a mandamus petition.[38] Mandamus is appropriate where (1) the petitioner has shown a “clear and indisputable” right to the writ; (2) the court is “satisfied that the writ is appropriate under the circumstances”; and (3) the petitioner has “no other adequate means to attain the relief [it] desires.[39]
A.
First, petitioners must show that they have a “clear and indisputable” right to mandamus relief.[40] That “require[s] more than showing that the court misinterpreted the law, misapplied it to the facts, *351 or otherwise engaged in an abuse of discretion.”[41] Where a matter is committed to a district court’s discretion, “we review only for clear abuses of discretion that produce patently erroneous results.”[42] Some courts have decided that waiver determinations are committed to a district court’s discretion.[43]
Section 1407 provides that transferred actions “shall be remanded ... at or before the conclusion of such pretrial proceedings.”[44] This mandatory language creates a powerful presumption in favor of remand, one that cannot easily be overcome.[45] The result is a statutory right to remand following an MDL proceeding, analogous to the statutory right to removal under 28 U.S.C. § 1441. A party cannot waive its removal rights through a forum-selection clause unless the waiver is “clear and unambiguous.”[46] Likewise, we hold that a Lexecon waiver must be “clear and unambiguous.”[47]
Petitioners’ waivers all .included, or referred to, limiting language. The MDL court’s notion,[48] echoed by plaintiffs, that petitioners are trying to limit their waivers retroactively, is not borne out by the facts. We hold that petitioners limited their venue waivers to the first two bellwether trials and that the MDL court erred by declaring that they had globally and permanently waived their objections to venue and personal jurisdiction. That was grave error: At most, petitioners’ waivers included ambiguous language that did not indicate a clear intent to waive all Lexecon objections to trials before the MDL court.
Plaintiffs highlight the broad language in the special master’s first report, which states that petitioners’ lead counsel agreed not to raise a venue objection “to any cases in the MDL proceeding being tried in the [Forum].”[49] But that report was issued pursuant to CMO 8,[50] which refers to “an initial bellwether trial process” and focuses on the first bellwether trial.[51] Given that context, that waiver is unequivocally limited to the first bellwether trial.
Plaintiffs point to the status conference in September 2013 in which petitioners appeared to walk back an earlier claim that they did “not agree to waive their Lexecon objections for a prejudicial, multi- *352 plaintiff trial.” But during the status conference, petitioners’ counsel noted that “we have waived the [Lexecon ] restriction on these—these cases, consistent with the report that the special master gave to the court earlier.”[52] The part of the sentence after, the em-dash limits the waiver to “these cases,” an apparent reference to the first batch ■ of bellwether cases. One of those cases was the subject of the first bellwether trial; the MDL court removed the others from its trial pool after that trial.[53]
In December 2014, after the first bellwether trial, the special master asked petitioners’ counsel to “confirm DePuy is willing to waive Lexecon for all MDL cases to be tried in Dallas.”[54] Petitioners’ counsel' responded “Confirmed. In order to allow the Court to select the next round of bellwether cases from a broader pool of cases that can be tried in Dallas, defendants have agreed to waive Lexecon objections to cases in the MDL proceeding being tried there.”[55] Plaintiffs portray that email as an unequivocal Lexecon waiver. But, again, note the limiting language: “the: next round of bellwether cases.” The special master’s subsequent report, in which he declared that petitioners had effected a Lexecon waiver for “any cases in the MDL being tried in the [Forum],”[56] must be read in light of those earlier remarks. Accordingly, there is no “clear and unequivocal” waiver; a plain reading is much 'to the contrary. We hold that the MDL court clearly abused any discretion it might have had and, in doing so, reached a “patently erroneous” result.
B.
Second, granting a mandamus petition must be “appropriate under the circumstances.”[57] Mandamus relief is “particularly appropriate” where an issue’s importance extends “beyond the immediate case.”[58] Petitioners note that the personal-jurisdiction issue has implications beyond the fourth bellwether trial because of the large number of cases pending in the Pinnacle Device MDL proceeding and because the district court’s reasoning may be adopted by future MDL courts. At oral argument, plaintiffs’ counsel, when questioned, conceded that he claims a “global waiver” that extends to over nine thousand cases. We hold that mandamus relief would be “appropriate under the circumstances” if all three standards were Satisfied.
C.
And finally, petitioners must show that they have “no other adequate means” to obtain relief,[59] That is a high bar: The appeals process provides an adequate remedy in almost all cases, even where defendants face the prospect of an expensive trial.[60] Mandamus is appropriate *353 only where an error is truly “irremediable on ordinary appeal.”[61] For example, after a Vermont district court found that it had personal jurisdiction over a New York Catholic diocese in a sex-abuse case, the Second Circuit granted mandamus, citing “the irreparable harm [that would be] caused by a needless foray into prior abuse investigations within the Diocese, exposing victims and their families to grueling [and unnecessary] inquiries.”[62] In Abelesz v. OTP Bank, 692 F.3d 638, 661 (7th Cir. 2012), the court granted mandamus to halt a $76 billion lawsuit against two Hungarian banks, citing, among other factors, “the inherent involvement with U.S. foreign policy.”
Petitioners claim that appeal is not an adequate remedy because the cost of having to defend more bellwether trials is “unjustifiable” given the strength of their personal-jurisdiction claims. It is no doubt true that petitioners will incur substantial costs if the fourth bellwether trial is allowed to proceed. At oral argument, the parties represented that each of the previous three bellwether trials lasted several weeks. But for appeal to be an inadequate remedy, there must be “some obstacle to relief beyond litigation costs that renders obtaining relief not just expensive but effectively unobtainable.”[63] Nor is the “hardship [that] may result from delay”— such as the risk of substantial settlement pressure—grounds for granting a mandamus petition.[64]
This case is distinguishable from Lloyd’s Register and from In re Volkswagen of America, Inc., 545 F.3d 304 (5th Cir. 2008) (en banc), in which we granted mandamus petitions overturning vbnue rulings. In both, appeal was an inadequate remedy'because petitioners (1) would have to overcome a high standard of review on appeal and (2) would face irreversible, non-monetary harm if the case went forward.[65] Those factors are not present here. This court reviews a district court’s exercise of personal jurisdiction de novo,[66] so the standard of review on appeal is not an issue, and petitioners would not face irreversible, non-monetary harm if the fourth bellwether trial were held.
We hold that petitioners have the usual and adequate remedy of ordinary appeal. In fact, they have taken advantage of that remedy by appealing the judgment in the third bellwether trial on personal-jurisdiction grounds. That appeal was filed in July 2017 and will be decided in due time.
III.
Petitioners have met two of the three parts of the Cheney test. But the requirement that a party have “no other adequate means” of obtaining relief is not satisfied. Accordingly, a majority of this .panel concludes that the petition for writ of mandamus is DENIED.

. See MDL Dkt. No. 772. Citations to "MDL Dkt.” are to In re: DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prods. Liab. Litig., N.D. Tex. Case No. 3:11-md-02244-K.

. See Petitioners' Appendix (“Petitioners’ App.”) 2.

. Id. at 24.

. In anticipation of any suggestion that a court of appeals exceeds its proper role in ruling on pending issues but nonetheless denying mandamus, we note that this court has routinely held, sometimes in published opinions, that a district court erred, despite stopping short of issuing a writ of mandamus. E.g., In re Dean, 527 F.3d 391 (5th Cir. 2008) (per curiam) (holding that district court had “violated” a federal statute): In re United States, No. 07-40629, 2007 WL 9627781, 2007 U.S. App. LEXIS 30793 (5th Cir. July 19, 2007) (per curiam) (holding that district court “abused its discretion”); In re U.S. Dep't of Homeland Sec., 459 F.3d 565 (5th Cir. 2006) (holding that district court "erred in declaring that no law enforcement privilege exists”); *348 In re Kleberg Cty., 86 Fed.Appx. 29 (5th Cir. 2004) (holding that district court "impermis-sibly violated the County's privilege not to reveal its confidential informants” and ran "afoul of controlling law”); In re Avantel, S.A., 343 F.3d 311 (5th Cir. 2003) (holding that district court erred in compelling production of allegedly privileged documents); In re Stone, 986 F.2d 898 (5th Cir. 1993) (per curiam) (holding that district court abused its discretion in ordering who must be present at settlement conference); In re Office of Thrift Supervision, 948 F.2d 910 (5th Cir. 1991) (holding that district court erred as a matter of law in attempting to transfer the proceeding, but noting that petitioner "has not made an adequate showing ... of harm that cannot be undone if the order is reversed on appeal”).

. See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998).

. Petitioners’ Appendix ("Petitioners' App.”) 3,

. Id.

. See 28 U.S.C. § 1407(a).

. See In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig., No. 3:09-md-02100-DRH-PMF, 2011 WL 1375011, at *6 (S.D. Ill. Apr. 12, 2011).

. Petitioners’ App. 4.

. Manual for Complex Litigation (Fourth) (2004) § 22,315; see also In re Chevron U.S.A., Inc., 109 F.3d 1016, 1019 (5th Cir. 1997).

. See Petitioners’ App. 4.

. Id.

. Id.

. MDL Dkt. No. 341, p. 5.

. MDL Dkt. No. 344, p. 5.

. Petitioners' App. 6.

. Id.

. Id.

. Id.

. Id. at 6-7.

. Id. at 7.

. Id.

. Id.

. Id.

. MDL Dkt. No. 657-1, p. 2 n.l.

. See MDL Dkt. No. 665, pp. 8-9, 11.

. See Petitioners’ App. 8.

. Id.

. Id. at 9.

. See Fifth Cir. No. 17-10828.

. See Petitioners’ App. 9.

. Id. at 9-10.

. Id. at 19-20, 24.

. On August 25, 2017, the day after this panel heard oral argument on the mandamus petition, the district court entered a two-paragraph order stating, in relevant part, as follows:
[T]he Court notifies the parties that the following cases, which were selected to be prepared for jury trial beginning September 5, 2017 ..., will be the final bellwether cases tried in the Dallas Division of the Northern District of Texas pursuant to Plaintiffs’ and Defendants' Lexecon waivers: [listing eight cases from New York],

. Cheney v. U.S. Dist. Court for D.C., 542 U.S. 367, 380, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004) (internal quotation marks omitted).

. In re Chesson, 897 F.2d 156, 159 (5th Cir. 1990) (per curiam).

. Cheney, 542 U.S. at 380, 124 S.Ct. 2576 (citations and internal quotation marks omitted).

. In re Lloyd’s Register N. Am., Inc., 780 F.3d 283, 288 (5th Cir.) (quoting Cheney, 542 U.S. at 380-81, 124 S.Ct. 2576), cert. denied, — U.S. -, 136 S. Ct. 64, 193 L.Ed.2d 31 (2015).

. Cheney, 542 U.S. at 381, 124 S.Ct. 2576 (quoting Kerr, 426 U.S. at 403, 96 S.Ct. 2119).

. Lloyd's Register, 780 F.3d at 290.

. Volkswagen, 545 F.3d at 312.

. See, e.g., Lechoslaw v. Bank of Am., N.A., 618 F.3d 49, 55-56 (1st Cir. 2010) (“A determination as to 'waiver [of personal jurisdiction is] within the discretion of the trial court, consistent with its broad duties in managing the conduct of cases pending before it.' ”) (quoting United States v. Ziegler Bolt & Parts Co., 111 F.3d 878, 882 (Fed. Cir. 1997)). We need not decide that standard-of-review question here, because a majority concludes that the abuse-of-discretion is met anyway.

. 28 U.S.C. § 1407 (emphasis added).

. See Lexecon, 523 U.S. at 35, 118 S.Ct. 956.

. City of New Orleans v. Mun. Admin. Servs., Inc., 376 F.3d 501, 505-06 (5th Cir. 2004).

. This is an issue of first impression. The only other circuit to have addressed the question, the Seventh Circuit, also held that a strong showing is needed to effect a Lexecon waiver. See Armstrong v. LaSalle Bank Nat’l Ass’n, 552 F.3d 613, 615-19 (7th Cir. 2009) (finding that the plaintiffs had not waived their right to remand under § 1407 by participating in pretrial proceedings and agreeing to specific trial dates).

. See Petitioners’ App, 7.

. Respondents' Appendix 9.

. Id.

. MDL Dkt. No. 190, p. 2.

. MDL Dkt. No. 344, p. 5.

. See Petitioners’ App. 6.

. Id. at 25.

. Id.

. MDL Dkt. No. 490, p. 1.

. Cheney, 542 U.S. at 381, 124 S.Ct. 2576.

. Volkswagen, 545 F.3d at 319.

. Cheney, 542 U.S. at 380, 124 S.Ct. 2576 (quoting Kerr v. U.S. Dist. Court for N.D. Cal., 426 U.S. 394, 403, 96 S.Ct, 2119, 48 L.Ed.2d 725 (1976)).

. Lloyd’s Register, 780 F.3d at 288 ("Even though the defendant may be required to engage in a costly and difficult trial and expend considerable resources before the court enters an appealable judgment, those unrecoverable litigation costs are not enough to make this means of obtaining relief inadequate,”).

. In re Avantel, S.A., 343 F.3d 311, 317 (5th Cir. 2003).

. In re Roman Catholic Diocese of Albany, N.Y., Inc., 745 F.3d 30, 41 (2d Cir. 2014) (per curiam).

. Lloyd’s Register, 780 F.3d at 289.

. Schlagenhauf v. Holder, 379 U.S. 104, 110, 85 S.Ct 234, 13 L.Ed.2d 152 (1964).

. Lloyd’s Register, 780 F.3d at 289; Volkswagen, 545 F.3d at 318-19.

. See Jackson v. FIE Corp., 302 F.3d 515, 521 (5th Cir. 2002).